Okay, the next case is called 5-13-19 in Burkart v. Ill. State Bar Assoc. Mutual Ins. Co. Thank you, Your Honor. May it please the Court, I represent the court, and I think the court is aware I am an attorney, an officer of the court, but I appear here before you representing myself, so just officially I'm considered pro se. And that being said, this is an appeal, an interlocutory appeal, of the court's denial of my motion, of my petition for injunctive relief to stop the ISBA from proceeding in Sangamon County, a county that's foreign to all contacts of the underlying case that was brought by the Wilsons against me in 2012. And as I point out in my brief, there are a myriad of issues that this court could delve into with regard to the line of cases, starting with Peppers on the conflict of interest that was declared by ISBA and their interference with my defense of the underlying case. I'm not sure the court needs to get into those. If it wants to get into those and make a declaration with regard to that, I think this is a proper case for it. But the issue really is pretty straightforward. If the 2005 settlement agreement that I entered into with ISBA to resolve a lawsuit that was filed in Madison County in 2004, I think, if that was a valid contract, then it was error for the trial court not to enjoin ISBA from filing a declaratory judgment action in Sangamon County. Well, did the trial court here ever get to that issue? What issue is that? I mean, did the trial court make any determination about the 2005 agreement and whether that venue clause was enforceable? I mean, as I understand it, there was a 2-619A3 motion which the trial court granted, which was dispositive, and the trial court then denied everything else as moot. Actually, the trial court, and it is in the record of proceedings, the trial court actually said, Mr. Burkhart, you're going to have to go to Sangamon County and make your arguments before Judge Schmidt. That's what the trial court did. So, yes, the trial court... So the trial court, Judge, is it Crowder? No, it was Judge Ruth. Judge Ruth really didn't make a ruling about the enforceability of your 2005 agreement in this litigation. Is that a fair statement? That is a fair statement. I would suggest that it is, I guess, because the actual order says it's moot. But I think that's error in and of itself because when you're presented with a motion for an injunction, I submit that the Mahatma case says that that's a situation where you have to determine whether or not the contract is valid. And his failure to go there is error, reversible error, based upon the pending pleadings before him. Okay. I mean, the point I'm trying to get at, of course, your opponent in their brief talks about the issue of jurisdiction. I mean, you brought your appeal as an interlocutory appeal from the denial of an injunction. But that's not what really happened in the trial court, is it? I believe this court has already addressed that issue in denying the motion to dismiss based on jurisdictional grounds. So I frankly didn't think I needed to address that issue. Well, was the trial court's order on 2-619A3, was that a final judgment? I mean, the case was dismissed. I mean, you could have brought your appeal as a final judgment. Is that it? I don't know. Okay. I'm going to confess that I don't know, and I can't feel that line drive up the middle right now. Okay. That's all right. Given all the other issues. Go ahead and make your argument. Okay. In any event, I think the issue is pretty straightforward. And if you look at the – and I also think that the standard review here when you're dealing with whether or not a contract is valid is a question of law, and therefore the standard is not an abuse of discretion, but it is rather not a question of law. So this court should look at that contract, and if it was valid and it was given for adequate consideration at that time, then it definitely was error for the court not to enjoin ISBA from proceeding in St. Lawn County. Now, I want to say up front, this case is kind of a mess because while this case has been pending, ISBA has pursued their case in St. Lawn County. And I'm now on appeal there on a judgment where they declared there's no coverage because the underlying dispute between Wilsons and Burkhart is nothing more than a fee dispute. Well, that determined their malpractice case, and that was wrong. This is a mess, but I think you can straighten it out. This panel can straighten it out. I rely on the cases that – the line of cases that say there is but one appellate court. And I believe, and this is the relief I'm going to be asking for, is that you have reversed Judge Ruth and you determined and declared that all orders issued in St. Lawn County should be vacated because that's how you got to get back to the status quo where the ISBA should have been enjoined. And that's the remedy that you should fashion in this particular case. And as authority for that, I'm going to cite this case because after this case and the whole malpractice case against me went up on appeal, Judge Crowder's decision was affirmed, and then the Wilsons petitioned for leave to appeal to the Supreme Court, and the Supreme Court refused to hear that case, basically making that a final judgment. Well, then we come back, and the court, the Fifth District Court, frankly, in a surprise to Judge Clarence Harrison and me, issued an order saying, oh, well, your order on – I thought it was March 9th or something like that, May 9th – was void because it didn't have jurisdiction. And all orders after that are void. So based upon that, I think you can fix this by saying everything that happened in St. Lawn County should be declared void. Now, in the Mahoney case, the Supreme Court affirmed in the Appellate Court's reversal of a trial court's refusal to enter an injunction case. That's the main case I rely on. And that dealt with the contract, where it was an employment contract which contained restrictive colors. Once the determination was made in that case that the contract was valid, the court basically established you have to fit and join them from violating that contract, otherwise you lose your contract rights. That's what I've lost here. I have the right – let's look at the contract. It's in the appendix at A6. Article 4, future litigation. The future litigation is made for the declaratory judgment action arising between Burkhart and ISPA regarding the underlying litigation, i.e. Wilson v. Burkhart, civil number 98L534, by agreement of the party said litigation must – may but must be filed in Madison County, Illinois. That was a bargain for covenant. That's the only – that really is the only issue this court needs to deal with. Because once you say that's a vile, enforceable contract, then I have the right, and if you don't reverse Judge Bruce's refusal to submit – to order an injunction, I have the right to have my litigation venue where I live. Just let me make sure I understand, though. I take it in the Sangamon County litigation this issue was raised, and you must have moved for transfer of venue to Madison based upon this. Is that correct? That's correct. And that was denied? Well – I guess – I mean, this may not be in the record, but I guess that was denied. It was. And then taken up to the 4th District and pending now, is that – Yes, it was. But I had – I don't know the – frankly, I'm swimming in uncharted waters, because I don't know the answer to the question I'm about to pose to you, and that is I believe that this court has to view Judge Bruce's decision at the time he made it. Because at the time he made it, I had not even filed a plea in Sangamon County, other than to object to venue because they hadn't served me. That's what the situation was. When the ruling was made in this case, the only court that had jurisdiction over all the parties was Madison County. ISBA had been properly served and entered appearance. The Wilsons had entered appearance, and I was the plaintiff. They were the only court that had proper jurisdiction at that time. Sangamon County did not have jurisdiction at that time. And I say I couldn't find any precedence on it or anything like that, but I say you have to judge Bruce's denial of the injunction at the time he had the case. And at that time, Madison County was the only viable jurisdiction that had – the only viable court that had jurisdiction over all the parties. Now, one of the issues that you raised earlier, and maybe this goes into it, is – that's kind of in the background here – is Article III on page A6 of the appendix. The reporting requirements, it's labeled as such, but there's a very important clause in that Article II of the appendix. It's an enforceable, legitimate right that if you don't reverse, we throw this away. It's gone because I've had to litigate in Sangamon County. If you don't reverse and vacate all those orders, I will never get my contract rights back. And here's one that has totally been violated in this case. The Burroughs Law Firm and Burkhart retain, however, the ultimate responsibility for making strategic decisions with regard to said litigation. ISBA is permitted and encouraged to provide suggestions and recommendations concerning strategic decisions. But I did the last step. How was that violated? It was violated because they hired somebody without telling me – without telling me. They hired another law firm to enter into negotiations with the Wilsons to settle the case. When I had told them don't, I didn't. Gary Meadows did. My counsel did. So I had given them a directive, an absolutely clear directive on a strategic decision not to enter into negotiations with the Wilsons in the underlying case. And to make it even – to show the absurdity of it, we at one point had an order from Judge Harrison dismissing the case. We had won. We were done. It was over. Except for a possible appeal. And, of course, he has reconsidered that decision, and the case still pens. In any event, there is no question, and I'm sure Mr. Truman will not dispute the fact, that they hired Johnson and Bell, and Johnson and Bell entered into negotiations with the Wilsons and violated and breached this contract. I will never get that contract right back unless you put this case back to where it should have been in time, where Judge Wilson should have granted the injunction, and, frankly, hopefully Judge Madison County would not have made the mistake Judge Schmidt made in ruling on a dispositive issue in a D.J. action that's going to affect the underlying lawsuit. Now – Just so I understand, Judge Schmidt is a circuit judge in Sangamon? Yes. Okay. Addressing the 2-619 issue, as – I believe it's clear fair to have granted that motion. The sole argument that was issued at that point in time was the Sangamon County case was filed first. And I believe the A.E. Staley case, the Supreme Court case, is spot on. And it's – it ruled on predecessor 2-619, which was the old Civil Practice Act 48-1C. But it's the identical language, and it basically said that there's absolutely no significance to who files first. I think that's a solid – a solid logical opinion. We should not make decisions based upon who races to the courthouse first. Okay? But that is basically his argument. The court should dismiss this case. That was ISBA's argument. The court should dismiss this case because we've already got a case pending in Sangamon County. Basically, it's an argument that, well, it's okay for us to breach our contract if we get there first. Now, to back up his argument, he says, oh, well, the 2012 case is not governed by the agreement because it's not – it has nothing to do with the case number 98L534. Well, that's just baloney. I call it transpicuous in the brief, but I'll say it's baloney right now. In count one, the Wilsons clearly are going for 2-1401 relief. Well, 2-1401 relief of what? Of the rulings in case number 98L534. So to say that the 2012 case has nothing to do with the 1998 case, to which they promised any future litigation regarding declaratory judgment action would be brought in Madison County, is simply not factually true. When you look at the pleadings, they absolutely are dealing with the same case. The A. E. Staley case is the closest case I could find. It's a little distinguishable on note because it had to do with cases filed in two different states. I think the logic is pretty clear. That case held that it was error to dismiss a case filed in Illinois, even though a case between the same parties had been filed first in Georgia. And it was because the case had legitimate and substantial relations to Illinois. Let's take a look at this in regard to the relationship between Sangamon County and the underlying lawsuit and Madison County and the underlying lawsuit. Which one has the most substantial and legitimate relationships to the – which county has it? It would be Madison County. No one in the underlying lawsuit lives in Sangamon County or Springfield. The plaintiff in Sangamon County, IHPA Mutual, doesn't even – their office is in Cook County. So I think the logic of A. E. Staley is the precedence that controls this case. The other thing is the – an issue on 2-619. The similarities between the lawsuit I filed in Madison County and their D.J. action that they filed in – which had not been served on me when I filed my case, probably days apart. I filed a motion regarding their egregious breach of my 2005 settlement agreement. It was a breach of contract action for which I was entitled to a jury trial. 2-619C requires a court to deny such a motion when it's one where a party is entitled to a jury trial and a jury demand has been made. I made a jury demand in my case. This case should not have been granted on 2-619 grounds for that reason alone. Again, there are issues with regard to if you wish to get into them that I raised in my third issue. And that is – is – but I think maybe those are issues that might be better preserved to the trial court once you reverse it and send it back to Judge Ruth because he has to rule on them in the first place. And maybe that's getting to the Court's earlier inquiries. The Court hasn't ruled on those but should. And the 2-619 motion was premature. And those have to do with this hammer clause. And maybe we should let Judge Ruth have a go at it with regard to the hammer clause. And I guess I'll use some of my time to point out an argument that I made to Judge Schmidt. The plaintiff at that time sent me a letter saying it was a conflict of interest, we reserve our rights to deny coverage later on, blah, blah, blah. I had to bring the D.J. action. So I included two counts in there for defecatory judgment action on both the lawsuits filed by the Wilsons. They are not the same case though because my breach of contract case is totally different from any issue that was raised in Sagamon County. And it should have been ruled on in Madison County. You'll have time when you're ready. Thank you. Good morning, Your Honors. May it please the Court, Counsel, Colonel Mrs. Wilson, who are co-defendants in this action, Robert Chemers for Applebee, ISB, a mutual insurance company. Your Honors, 38 years of practice, 1,000 appeals, 550 published opinions with my name on it. I have learned that it's a disservice to counsel, it's a disservice to the Court to not file a reply to you through the appellant. Because you sit at the Applebee table and you hear your opponent's position as to your argument for the very first time. That having been said, let me tell the Court what this appeal is not. Justice Stewart, this is not an appeal from an attorney. There wasn't one granted, there wasn't one denied. In fact, this is an attempt to appeal the motion for injunctive relief that the trial court deemed moot by the involuntary dismissal under 261983. The trial court did not deny injunctive relief. It said the motion's moot because 261983 is granted. This Court is not in the business of deciding moot questions. The appeal, contrary to what Mr. Burkhart said, is not in connection with an interlocutory order. The 261983 order, as Justice Stewart inquired, is a final adjudication pursuant to Supreme Court Rule 273. It's an adjudication on the merits. Okay, let's get to something specific then. Okay, he files a notice of appeal under 307 because of an alleged denial of injunctive relief. Let's just say, hypothetically, that's wrong. There wasn't a denial of injunctive relief. Correct. However, there was a final judgment. There was. And he raises the issue about that final judgment in his brief. So, what happens there? Well, we... And I know you addressed this in your brief, but you didn't... Sure. We moved to dismiss. In fact, we filed a motion to dismiss when the ink was barely dry on what was filed. We filed a notice of interlocutory appeal under Rule 307A1 saying that this is not an interlocutory order and there's no appeal under 307. The appeal should be brought under 301. The court, after 11 months, denied the motion. But this court can always revisit its jurisdiction. This court can decide it was wrong in April of this year when it denied the motion to dismiss, and it can dismiss this appeal. Or it can say, what difference does it make? But he says it's 307A1. It should be 301. He calls it a notice of interlocutory appeal. There is a final judgment under 2619A3. The parties agreed to the issue. We're going to look at it. Okay, and that's what I'm trying to get at here, and that's what I was asking you to address. I'm looking at the notice of appeal right now. Correct. It does say notice of interlocutory appeal. However, it does say that it appeals from the, it says interlocutory order, but it appeals. It's clearly the same parties. It's clearly the same cause. The rule says you can bring a motion to dismiss where you have another action between the same parties for the same cause. Clearly the same parties. Same cause doesn't mean the pleadings must be carbon copies. It means they must arise from or out of the same core property fact. That's a mistake over here. Judge Ruth looked at those factors, and he also looked at the purpose of 2619A3. Avoid duplication. Avoid vexation. Avoid harassment. Avoid multiplicity. This is a classic case for granting 2619A3 relief. This is a better case for this court to write an opinion, for the practicing bar and the lawyers to know how to deal with a 2619A3 issue. Contrary to what's in his brief, the standard of review is not the no vote. The standard of review based on Staley is abuse of discretion. I will cite the court to 84 Illinois seconds at 253 where the Supreme Court made a very clear use of discretion. It doesn't even contend there was an abuse of discretion. And on this record, the exercise of discretion was sound. Same parties. Same cause. Avoid multiplicity, vexation, harassment, likelihood of obtaining complete relief. Judge Ruth told Mr. Berger, on the record, when you read the report of proceedings, make the argument to Judge Schmidt, the Sandman County judge. He did. And he lost. And he took his appeal to the 4th District on venue, which is what you heard, that breach of contract. That's not before this court. The memorandum of agreement. Not before this court. The venue clause of the policy. Not before this court. Those were arguments made to the Sandman County judge who denied the motion to transfer from Sandman to Madison. The appeal was taken to the 4th District. Leave to appeal was denied. Leave to appeal sought to the Supreme Court. Leave to appeal denied. We then filed dispositive motions in Sandman County. We won them all. The case is on appeal in the 4th District. Another one of the factors. Comedy? No doubt. Access to court. You have an unfettered access to a court. If it's the wrong court, you argue it to that judge, not the judge of the second court. And that's what Judge Ruth told him. Eminently proper ruling. Prevention of multiplicity, vexation, and harassment? Clear. Counsel, let me make sure I have this straight. And we can take judicial notice of what happened in Sandman County. Absolutely. And also what's been filed in the 4th District. But you're saying that the plaintiff here did have the opportunity in Sandman County to raise these breach of contract issues? Yes, Your Honor. In fact, in Sandman County, the counterclaim that was filed was a version of a Madison County complaint. The counterclaim was dismissed. That's on appeal. As of September 25, there is nothing in Sandman County. And, Your Honor, 167 elect 362. At 367, the appellate court can take judicial notice of other courts' documents. Let me just follow up on Justice Schwarm's question. What I understand is that there's already been one appeal to the 4th District on the venue issue. Yes. That was taken up separately. Correct. And the 4th District affirmed the Sandman County Supreme Court on the venue issue? Yes. Denied an actual appeal. In other words, Your Honor, if this court were to send this case back to Madison County, to do something, from my perspective, it must be in its home court. And that's basically what he told Judge Ruth. I think Your Honor should be interested in the colloquy between counsel and the trial court. That counsel and the trial court as to the difference between the justices of this court and those on the 4th District. I think it's apparent that the 4th District is moving a lot faster than we are. They've already decided in Sandman County, one appeal, back down, now it's on a second appeal. Well, it was a, the appeals in the 4th District initially, Your Honor, was from the denial on the motion to transfer venue, which would have been under 306. So it was a quick appeal, they got the application for a lethal appeal, we opposed it, it was denied. And then within 35 days you saw a lethal appeal to the Supreme Court. So this case is like on a string. It's going to various courts. But this court can put a Madison County litigation to an end by affirming Judge Ruth's decision, which has nothing to do with an injunction. It has nothing to do with most of what Mr. Bunker stood up here and told you. And it has clearly something to do with a final judgment under Rule 273, which he could not answer. The trial court here conducted the proper analysis of what's required under 2619A3. He properly considered the appropriate factors, acted within his sound discretion, and made the correct ruling. In fact, you don't hear anything contrary from the plaintiff, because the plaintiff doesn't recognize the standard of review, doesn't challenge the elements of 2619A3. Instead, he talks about factors which Judge Ruth said earlier to the judge in Springfield, which he did and lost. They weren't proper on a 2619A3 issue. The court on a 2619A3, all Your Honor said as trial judges, you dealt with 2619A3 on the firing line, not on whether there was an abuse of discretion with another judge on the firing line. You're not concerned with the first suit as to why it's there, what it's about, other than it doesn't involve the same parties and the same cause as the second suit. And if it does, the second suit is dismissed in favor of the first one, if the factors are met. The factors were met, Your Honor. You're not concerned with why it's filed the same in the county. That's something Mr. Kirkpatrick has not understood and has never addressed correctly. He has not attacked the 2619A3 analysis we've made because there's no reply. I had no idea what his position was until I heard it, and he didn't touch it on it. So we asked this court to take another look at the jurisdictional issue. If you're satisfied you have jurisdiction because you have parties who submitted a fully briefed appeal, and you will say, well, we have the order in front of us. The fact that the proponent in the notice of appeal described it incorrectly and brought it under the wrong rule shouldn't affect our jurisdiction. We could deal with that, and I suppose there are cases that would support that. If so, then the motion to dismiss would probably deny. If you disagree and you deliberate, dismiss the appeal. It's as if it was never brought. It's over. Or, better yet, summarily affirm. But we ask you to write an opinion. These issues need discussion. We tried to find a case that was on all fours, but there isn't one out there because these issues seem quite clear and maybe not get appealed all that often. The other point you heard about you can't grant a 2619A3 motion if there's a jury demand. Mr. Burkhart needs to read all of 2619C. That's not what it says. It says that there's a question of facts that the trial court finds. The trial court is not supposed to resolve the question of facts on a 2619 motion. It's the same as a summary judgment. The question of facts, the motion's over. It's denied. That's what that means. That happens in statute of limitations, defenses, that sort of thing. Correct. So for all of those reasons, you're either asking to dismiss the appeal or affirm. Any questions? Counsel, on this jurisdiction issue, I thought I heard you say earlier in your argument that you agree that this would be a final judgment. Yes. Judge Ruth's ruling would be a final judgment. Springer Rule 273 says it's an adjudication on the merits unless it says it's not. This granted 2619A3 relief and dismissed the lawsuit. I drafted the order and handed it to the court for a signature. It also states that all other motions, including my 2615 motion and Mr. Burkhart's injunction motions, were denied as moot. The only issue before this court is 2619A3. We'd ask it to affirm.  Mr. Burkhart, let me start by asking you a question just on this final point I inquired of opposing counsel on. On the jurisdictional issue, you've said that we've got jurisdiction under 307A1. Do you see any reason why we can't say this is a final judgment and we have jurisdiction as it being a final judgment from the Madison County Court? You know, let me preface my answer by saying, usually a person who uses themselves as a lawyer is a fool for a lawyer. That might apply in this case. And to be honest with you, I don't know. Because it's the same question I've been asked before. I don't. I think there's enough cases that say that the jurisdiction of the court is vested with the final notice of appeal. The fact that it's not in proper form or not isn't going to destroy the jurisdiction of the court. I'm aware of that line of cases. So is there any reason? I don't know of any reason that would stop the court from doing that. But I will say this, that jumps to the question, and I approach this from the question of I was losing my contract rights. I think there is no question in this case that I lost the right to have the declaratory judgment proceeding heard in Madison County. That has been obliterated. The second thing that the contract right has been obliterated is I lost complete control of the defense of the underlying case. Those are two facts that cannot be disputed. They have. And they aren't disputed. Did you get to raise all those in front of Judge Schmidt in Sangamon County? I was forced to raise those in front of Judge Schmidt. But now here's the deal. First of all, I wanted to address an issue because it has something to do with the first appeals in Sangamon County. Those were not on the merits. Under that appeal, it was an appeal questioning his refusal to transfer venue. You have to petition for leave to appeal. A denial of a petition for leave to appeal does not address the issue of venue. So no. Okay. So let me ask. So in other words, the 4th District didn't take, they didn't accept the petition for leave. That's correct. Oh, okay. So the issue, the venue issue is still before the 4th District in my appeal of the ultimate decision. I appeal all judgments including that ruling of Judge Schmidt refusing to send it back to Madison County. But again, Mr. Chalmers calls for an end to this litigation. I just want it to end correctly. And I wrote down a question here. It's like, you know, two points, two issues. It's, is it okay to breach a contract if you can hurry up and get through in a different jurisdiction that apparently goes fast? Then it's olly olly, you come free. Go ahead and breach the heck out of your contracts. It doesn't matter that in 2005 you just breached your case. You're going to be brought to Madison County. What are we doing? And then I wrote down right next to this. I'm a lawyer of cases because I researched recently a different case. The courts in their equitable powers are not going to place form over substance. What happened in this case? Because the Wilsons tried to relitigate the malpractice case, and look at the pleas. It is the same case. They're asking for damages on malpractice. Because they filed again in 2012, ISBA saw an opportunity to renege on their agreement that they bring the case in Madison County. If, and everybody's looking at it, well, did you get a chance to litigate those issues in Sacramento County? I was forced to. Did I want to? No. Should I have been forced to? No. So we have to go there to make this case right. I'm not sure I'm making all the right arguments to do it. I trust this court will get there. But I do believe that the proper remedy in this case is to reverse the trial court because it is, it was, if you don't reverse the trial court, ISBA gets by with breaching their contract. And that just should not have been the case. I should not have been forced to litigate my case in Sacramento County. One of the things Judge Ruth mentioned, back and forth, it's in the record, I believe. Let me just, I guess it's still possible that the Fourth District could agree with you in the appeal on the merits and say Judge Schmidt erred in denying the change of venue, right? That is possible. But I have already been forced to litigate the case there. I already lost my contract right. I should never have been there. And everyone who was there should be vacated. So put this thing right and enforce my contract. Thank you.